EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KENNETH MEYERS,
on behalf of Plaintiff and the
class members described herein,

     Plaintiff,

  vs.

ARIZONA BEVERAGES USA LLC,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 1:20-cv-05543

Judge Andrea R. Wood
Magistrate Judge Jeffery Cummings

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT
## OR, ALTERNATIVELY, TO TRANSFER VENUE

---

SAUL EWING ARNSTEIN & LEHR LLP
161 North Clark Street, Suite 4200
Chicago, Illinois 60514
Telephone: (312) 351-3292
*Casey.grabenstein@saul.com*

-and-

McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
570 Broad Street, Suite 1500
Newark, New Jersey 07102
Telephone: (973) 622-7711
*rdonovan@mdmc-law.com*

*Attorneys for Defendant,*
*Arizona Beverages USA LLC*

Robert P. Donovan, Esq.,
Of Counsel and on the Brief
*(Admitted Pro Hac Vice)*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS GERMANE TO MOTION ........................................3

I.      Allegations Concerning Venue ...............................................................3

II.     Assertions About Purchases.....................................................................4

III.    Claims of Mislabeling..............................................................................4

LEGAL ARGUMENT .........................................................................................5

I.      The Complaint Fails to State Any Claim .................................................5

        A.      Plaintiff's Claims Are Expressly Preempted Because the
                Complaint Does Not State a Claim of a FDCA Violation
                Based Upon the Applicable Testing Standard to Determine
                Calorie Content ...............................................................................6

                1.      Testing Standards Under 21 C.F.R. § 101.9(c)...............7

                2.      Preemption Applies Because Plaintiff Fails to Allege
                        Lack of Calorie Content Based Upon the FDA Standard...........8

                3.      Plaintiff's Bare Bones Pleading Cannot be Fairly Read
                        To State a Violation of the FDCA ..................................9

        B.      Plaintiff's Conclusory Allegations About Calorie Content Do
                Not Satisfy the Standards Under *Twombly* and *Iqbal* ...........11

        C.      No Pre-Suit Notice of Breach of Warranty is Alleged and
                Counts I and II Fail as a Matter of Law ..................................13

        D.      No Legal Basis Exists to Claim Breach of Implied Warranty
                Under the Magnuson-Moss Warranty Act ...............................14

        E.      The ICFA and IDCSA Safe Harbor Provisions Bar Plaintiff's
                Claims Under Counts III and V ................................................16

        F.      Pre-Suit Notice is Required Before a Claim Can be Filed

Under the IDCSA ...................................................................................17

G.     The Fraud Claims Lack Particularity as Required Under Rule 9(b).....................17

H.     Plaintiff Does Not Plead All the Elements Necessary to State a
       Claim for Common Law Fraud.............................................................................18

II.    Transfer of Venue of This Matter is Proper Under 28 U.S.C. § 1404(a)...........................19

A.     Venue is Proper in the Transferor District................................................................21

B.     The Eastern District of New York is a More Convenient Venue .........................21

       1.     Plaintiff's Choice of Forum .......................................................................21

       2.     Situs of Material Events................................................................................23

       3.     Relative Ease and Access to Sources of Proof...........................................24

       4.     Convenience of the Witnesses ....................................................................24

       5.     Convenience of the Parties of Litigating in Respective Forums...............25

C.     It is in the Interest of Justice That Venue Be Transferred to the
       Eastern District of New York .................................................................................25

       1.     Speed to Trial..............................................................................................25

       2.     Familiarity of Each Forum With the Applicable Law ..............................26

       3.     Desirability of Resolving Controversies in Each Locale ...........................26

       4.     Relation of Each Community in the Occurrence at Issue ..........................27

CONCLUSION.......................................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.B.C. Home & Real Estate Inspection, Inc. v. Plummer*,
500 N.E.2d 1257 (Ind. Ct. App. 1986)......................................................................7

*Advantage Eng'g, Inc. v. Burks Pumps, Inc.*,
No. 93-3883, 1994 WL 317126 (7th Cir. June 30, 1994).......................................14

*AL & PO Corp. v. Am. Healthcare Capital, Inc.*,
No. 14-1905, 2015 WL 738694 (N.D. Ill. Feb. 19, 2015).......................................21

*Amoco Oil Co. v. Mobil Oil Corp.*,
90 F. Supp. 2d 958 (N.D. Ill. 2000) ........................................................ 20, 21, 25

*Anchor Wall Sys., Inc. v. R&D Concrete Prods., Inc.*,
55 F. Supp. 2d 871 (N.D. Ill. 1999) .......................................................................22

*Arcor, Inc. v. Textron, Inc.*,
960 F.2d 710 (7th Cir. 1992) .................................................................................14

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
552 F.3d 613 (7th Cir. 2009) .................................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................... *passim*

*Baldwin v. Star Scientific, Inc.*,
No. 14-588, 2016 WL 397290 (N.D. Ill. Feb 2, 2016) ..........................................13

*Beaton v. SpeedyPC Software*,
No. 13-08389, 2014 WL 4376219 (N.D. Ill. Sept. 2, 2014)................................3, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................... *passim*

*Body Sci. LLC v. Boston Sci. Corp.*,
846 F. Supp. 2d 980 (N.D. Ill. 2012) ..................................................................20, 21

*Boulet v. National Presto Industries, Inc.*,
No. 11-840, 2012 WL 12996297 (W.D. Wis. May 7, 2012)................................3, 18

*Braddock v. Jolie*,
No. 11-8597, 2012 WL 2282219 (N.D. Ill. June 15, 2012)....................................21

iii

*Brownmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir. 2012) ................................................................................5

*Burke v. Weight Watchers Int'l, Inc.*,
    983 F. Supp. 2d 478 (D.N.J. 2013) ...................................................................8, 9

*Coffey v. VanDorn Iron Works*,
    796 F.2d 217 (7th Cir. 1986) ..............................................................................20

*Comfax Corp. v. N. Am. Van Lines, Inc.*,
    587 N.E.2d 118 (Ind. Ct. App. 1992)................................................................3, 18

*Cornerstone Design, Ltd. v. Lumatec USA, Inc.*,
    No. 2005-2448, 2007 WL 1695246 (Wis. Ct. App. June 13, 2007).........................14

*Curran v. Bayer Healthcare LLC*,
    No. 17-7930, 2018 WL 2431981 (E.D. Ill. May 30, 2018) ...........................*passim*

*Dwyer Instruments, Inc. v. Wal-Mart.com USA, LLC*,
    No.17-636, 2017 WL 6034434 (N.D. Ind. Dec. 6, 2017).......................................19

*First Nat'l Bank v. El Camino Resources, Ltd.*,
    447 F. Supp. 2d 902 (N.D. Ill. 2006) ...............................................................23, 24

*Gonzalez v. City of Chicago*,
    No. 16-08012, 2018 WL 1561735 (N.D. Ill. March 30, 2018)...............................17

*Grice Eng'g, Inc. v. JG Innovations, Inc.*,
    691 F. Supp. 2d 915 (W.D. Wis. 2010) ...............................................................17

*Gubala v. HBS Int'l Corp.*,
    No. 14-9299, 2016 WL 2344583 (N.D. Ill. May 4, 2016)............................9, 10, 11

*Hanover Ins. Co. v. N. Bldg. Co.*,
    891 F. Supp. 2d 1019 (N.D. Ill. 2012) .............................................................20, 25

*Heil Co. v. Curotto Can Co.*,
    No. 02-782, 2004 WL 725737 (N.D. Ill. Mar. 30, 2004) ......................................27

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ...................................................................13

*In the Matter of Lisse*,
    905 F.3d 495 (7th Cir. 2018) ..............................................................................25

*In re Sears, Roebuck & Co.*,
    No. 05-2623, 2006 WL 1443737 (N.D. Ill. May 17, 2006)....................................15

*Jaramillo v. DineEquity, Inc.*,
    664 F. Supp. 2d 908 (N.D. Ill. 2009) ...................................................22

*Jasper v. Abbott Labs. Inc.*,
    834 F. Supp. 2d 766 (N.D. Ill. 2011) ...................................................17

*Kjaer Weis v. Kimsaprincess Inc.*,
    296 F. Supp. 3d 926 (N.D. Ill. 2017) ........................................22, 25, 26

*Lafleur v. Dollar Tree Stores, Inc.*,
    No. 1:11-8473, 2012 WL 2280090 (N.D. Ill. June 18, 2012)................22

*Lewis v. Grote Indus., Inc.*,
    841 F. Supp. 2d 1049 (N.D. Ill. 2012) .................................................24

*Muir v. NBTY, Inc.*,
    No. 15-9835, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016) .................10

*Nicks v. Koch Meat Co., Inc.*,
    260 F. Supp. 3d 942 (N.D. Ill. 2017) ..................................................24

*O'Connor v. Ford Motor Co.*,
    No. 19-5045, 2020 WL 4569699 (N.D. Ill. Aug. 7, 2020) ....................14

*Pardini v. Unilever United States, Inc.*,
    961 F. Supp. 2d 1048 (N.D. Cal. 2013) .................................................9

*Preston v. Am. Honda Motor Co., Inc.*,
    No. 17-3549, 2017 WL 5001447 (N.D. Ill. Nov. 2, 2017) ....................23

*RAH Color Techs., LLC v. Xerox Corp.*,
    No. 17-06813, 2018 WL 9539781 (N.D. Ill. Sept. 24, 2018)...........20, 26

*Reid v. Unilever U.S., Inc.*,
    964 F. Supp. 2d 893 (N.D. Ill. 2013) ..............................................15, 16

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
    626 F.3d 973 (7th Cir. 2010) ..............................................................20

*Reyes v. McDonald's Corp.*,
    No. 06-1604, 2006 WL 3253579 (N.D. Ill. Nov. 8, 2006) ......................7

*Rorah v. Petersen Health Care*,
    No. 13-01827, 2013 WL 3389063 (N.D. Ill. July 8, 2013) ....................24

*Rosen v. Spirit Airlines, Inc.*,
    152 F. Supp. 3d 1055 (N.D. Ill. 2015) .................................................24

*Schimmer v. Jaguar Cars., Inc.*,
    383 F.3d 402 (7th Cir. 2004) ....................................................................14

*Semitekol v. Monoco Coach Corp.*,
    582 F. Supp. 2d 1009 (N.D. Ill. 2008) ........................................................15

*T&M Farms v. CNH Indus. Am., LLC*,
    No. 19-0085, 2020 WL 1082768 (E.D. Wis. Mar. 5, 2020) ........................17

*Taylor v. Midland Funding, LLC*,
    94 F. Supp. 3d 941 (N.D. Ill. 2015) ...........................................................22

*Terrazzino v. Wal-Mart Stores, Inc.*,
    335 F. Supp. 3d 1074, 1083 (N.D. Ill. 2018) .............................................17

*Turek v. Gen. Mills*,
    662 F.3d 423 (7th Cir. 2011) .............................................................. *passim*

*Ulrich v Probalance, Inc.*,
    16-10488, 2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) ............................10

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ..................................................................................19

*Wright v. Assoc. Ins. Cas. Inc.*,
    29 F.3d 1244 (7th Cir. 1994) .......................................................................5

**STATUTES**

810 Ill. Comp. Stat. Ann. § 5/2-607(3)(1) ...........................................................2

815 Ill. Comp. Stat. Ann. § 505/10b(1) .........................................................2, 16

15 U.S.C. § 2301(6) .........................................................................................15

15 U.S.C. § 2302(e) .........................................................................................15

21 U.S.C. § 343-1(a) ..........................................................................................6

21 U.S.C. § 343-1(a)(1)-(5) ................................................................................6

21 U.S.C. § 343(q) .............................................................................................6

28 U.S.C. § 1391 ..............................................................................................21

28 U.S.C. § 1404(a) ................................................................................. *passim*

Ind. Code § 24-5-0.5-3 .......................................................................................5

Ind. Code § 24-5-0.5-5(a) ................................................................................................2, 17

Ind. Code § 24-5-0.5-6 ....................................................................................................2, 16

Ind. Code § 26-1-2-607(3)(a) ..........................................................................................2, 4

15 U.S.C § 2301, *et seq.* ...................................................................................................2, 15

Wis. Stat. Ann. § 402.607(3)(a) ......................................................................................2, 14

Wis. Stat. Ann. § 100.18 ..................................................................................................5

**RULES**

Rule 201(b) .......................................................................................................................25

Rule 9(b) ...........................................................................................................................3, 17, 18

Rule 12(b)(6) .....................................................................................................................1, 5

Rule 23 ..............................................................................................................................26

**REGULATIONS**

21 C.F.R. § 100.1 .............................................................................................................7

21 C.F.R § 101.9 ................................................................................................ *passim*

21 C.F.R. § 101.12 ............................................................................................. *passim*

21 C.F.R. § 101.60 ...........................................................................................................12, 16

21 C.F.R § 172.320 ..........................................................................................................10

21 C.F.R § 201.327 ..........................................................................................................13

81 Fed. Reg. 34000 (May 27, 2016) ...............................................................................11

83 Fed. Reg. 19619 (May 4, 2018) .................................................................................11, 12

**OTHER AUTHORITIES**

U.S. District Courts, Combined Civil and Criminal Federal Court Management Statistics
    (June 30, 2020), https://www.uscourts.gov/statistics-reports/federal-court-
    management-statistics-june-2020. ..............................................................................26

## PRELIMINARY STATEMENT

Defendant, Arizona Beverages USA LLC ("ABU"), submits the within memorandum of law in support of ABU's motion to dismiss the complaint ("Complaint" or, at times, "Compl.") filed by plaintiff, Kenneth Meyers ("Plaintiff"), pursuant to Rule 12(b)(6), for failure to state a claim. Alternatively, ABU moves to transfer venue of this action to the United States District Court, for the Eastern District of New York, in accordance with 28 U.S.C. § 1404(a). As is set forth more fully below, just grounds exist to dismiss the Complaint because:

- **Plaintiff's Claims are Preempted** - The gravamen of the Complaint is that ABU fraudulently labeled the calorie content of its "zero calorie Arnold Palmer drink" ("Arnold Palmer Beverage"). However, consistent with the holding in *Turek v. Gen. Mills,* 662 F.3d 423, 426 (7th Cir. 2011), and the express preemption provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, as amended by the Nutrition Labeling and Education Act ("NLEA") (collectively, "FDCA"), Plaintiff's claims are preempted because the labeling at issue is authorized and/or otherwise permitted under the FDCA.

- **No Plausible Claim for Relief is Pled** – The FDA provides five different mechanisms, connected by the disjunctive "or," that a food manufacturer may use to calculate the calorie content of a food item. *See* 21 C.F.R. § 101.9(c)(1)(i). Plaintiff does not allege a violation of that regulation, nor does he state what type of testing methodology was used to assert that "the zero calorie version of the drink did not have less than five calories." (Compl, ¶ 23). Contrary to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Plaintiff fails to set forth concrete facts to state a claim because no facts are pled to state how, when and why the calorie content in the Arnold Palmer Beverage was misstated. Given the claim of fraud, Plaintiff must

1

allege facts to set forth a plausible basis upon which that claim is being made. *See Curran v. Bayer Healthcare LLC*, No. 17-7930, 2018 WL 2431981, \*4 (E.D. Ill. May 30, 2018)**.**

- **Lack of Pre-Suit Notice Bars Warranty Claims** – Plaintiff fails to state a claim for breach of warranty because he does not allege that he provided ABU with notice of breach before commencing suit. 810 Ill. Comp. Stat. Ann. § 5/2-607(3)(1); Ind. Code § 26-1-2-607(3)(a); and Wis. Stat. Ann. § 402.607(3)(a).

- **No Claim for Implied Warranty Exists Under the Magnuson-Moss Warranty Act**-Absent an express warranty claim, no claim can be pursued for implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C § 2301, *et seq*. ("Magnuson-Moss"). Regardless, the statement "zero calories" is not a "written warranty" under Magnuson-Moss. Plaintiff's claim also does not satisfy the monetary threshold necessary to state a claim.

- **The Safe Harbor Provisions in the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and the Indiana Deceptive Consumer Sales Act ("IDCSA") Bar Those Causes of Action** – Both the ICFA and IDCSA preclude claims for conduct expressly permitted and/or authorized under federal law. 815 Ill. Comp. Stat. Ann. § 505/10b(1); Ind. Code § 24-5-0.5-6. Because the label statements concerning serving size and calorie content are required under 21 C.F.R. § 101.12 and 21 C.F.R. § 101.9(c), those safe harbor provisions apply.

- **Lack of Pre-Suit Notice Dooms the IDCSA Claims** - Prior to filing suit under the IDCSA, pre-suit notice is required. Ind. Code § 24-5-0.5-5(a). Plaintiff does not allege that he provided such notice.

- **Failure to Plead Fraud With Particularity** - Plaintiff fails to describe the who, what, when, where, and how regarding the improper false statement of caloric content. Plaintiff also does not identify any FDCA provision allegedly violated and provides no assertions about any

test results. Further, Plaintiff does not state the purchase price he paid for the Arnold Palmer Beverage. Consistent with Rule 9(b), more particularity is required to provide ABU with fair notice of the factual grounds asserted for fraud.

- **Plaintiff Does Not State a Claim for Common Law Fraud** – Illinois, Indiana and Wisconsin require Plaintiff to plead knowledge of falsity with regard to the alleged misrepresentation. *Beaton v. SpeedyPC Software*, No. 13-08389, 2014 WL 4376219, *3 (N.D. Ill. Sept. 2, 2014); *Boulet v. National Presto Industries, Inc.*, No. 11-840, 2012 WL 12996297, *5 (W.D. Wis. May 7, 2012); *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125 (Ind. Ct. App. 1992). No such allegations are pled.

Alternatively, pursuant to 28 U.S.C. § 1404(a), just grounds exist to transfer this action to the United States District Court for the Eastern District of New York. ABU is a citizen of New York and Plaintiff is a citizen of Michigan. Plaintiff does not allege that he interacted with ABU in Illinois or that he ever bought the Arnold Palmer Beverage directly from ABU. ABU's headquarters are in Woodbury, New York. ABU's employees, with knowledge of the labeling and sale of the Arnold Palmer Beverage, are located in New York. None of the co-packers, who make ABU's beverages, are located in Illinois. Transfer of venue is warranted for the convenience of the parties, and witnesses, and to promote the interest of justice.

## STATEMENT OF FACTS GERMANE TO MOTION

### I. Allegations Concerning Venue

Plaintiff alleges that "[v]enue and personal jurisdiction are proper because Plaintiff purchased Defendant's mislabeled product in Chicago, Illinois." (Compl., ¶ 3). Plaintiff asserts that he is a citizen of Michigan, a resident of Lawrence, Michigan and that he formerly resided in Illinois. (*Id.*, ¶ 4).

#4355084                                    3

Regarding ABU, Plaintiff alleges that it is a limited liability company, organized under the laws of New York, is a citizen of New York, and has its principal offices at 60 Crossways Park Drive West, Woodbury, New York 11797. (*Id.*, ¶¶ 5 and 7). He also asserts that ABU does business in Illinois. (*Id.*, ¶ 5).

## II.    Assertions About Purchases

Plaintiff claims to have purchased the Arnold Palmer Beverage: (1) "at the Walgreens at 189 N. Northwest Hwy, Barrington, IL 60010 on September 20, 2019; the Shell gas station at 106 N. Northwest Highway, Barrington, IL 60010 on April 8, 2019, and April 9, 2019, and the Shell gas station at 100 W. Northwest Hwy, Barrington, IL 60010 on July 13, 2019" (Compl., ¶ 13); (2) "at the BP gas station at 112 S. Main Street, Walworth, WI 53184, on June 14, 2019, June 15, 2019, and September 22, 2019" (*Id.*, ¶ 14); (3) "at the Walgreens at 580 Indian Boundary Rd., Chesterton, IN 46304, on July 12, 2019; and the BP gas station at 525 Indian Boundary Rd., Chesterton, IN 46304, on April 10, 2019, April 22, 2019, July 12, 2019, and September 23, 2019" (*Id.*, ¶ 15); and (4) "at the Shell gas station at 7000 Westnedge, Portage, MI 49002" (*Id.*, ¶ 16).

## III.    Claims of Mislabeling

Plaintiff claims the Arnold Palmer Beverage "did not qualify for labeling" as "zero calorie" and was renamed "diet." (*Id.*, ¶ 20). He attaches, as an exhibit to the Complaint, labels of two 23 ounce cans of the Arnold Palmer Beverage, one labeled as "zero calorie" and the other labeled "diet" (*Id.*, ¶ 21). According to Plaintiff, "[u]nder Food & Drug Administration regulations, a product cannot be labeled or represented as having zero calories unless a standard serving has no more than five calories." (*Id.*, ¶ 22). He alleges that "the zero calorie version of the drink did not have less than five calories." (*Id.*, ¶ 23). The sole basis pled for this claim is

the assertion that "[r]ecently, the Food & Drug Administration required AriZona to relabel the 'zero calorie' product as a 'diet' product with 15 calories per can." (*Id.*, ¶ 24).

The Complaint contains seven causes of action for: (1) breach of express warranty under the Uniform Commercial Code ("U.C.C."), § 2-313; (2) breach of implied warranty; UCC and Magnusson-Moss; (3) consumer fraud under the ICFA; (4) consumer fraud under Wis. Stat. § 100.18; (5) consumer fraud under Ind. Code § 24-5-0.5-3; (6) common law fraud; and (7) unjust enrichment. (Compl., ¶¶ 28-111). Plaintiff seeks nationwide class certification for the breach of warranty, common law fraud and unjust enrichment claims. (*Id.*, ¶¶ 34, 46, 92 and 105). The class allegations for consumer fraud are limited to persons who purchased the Arnold Palmer Beverage in Illinois, Wisconsin and/or Indiana. (*Id.*, ¶¶ 59, 70 and 82).

## LEGAL ARGUMENT

### I.     The Complaint Fails to State Any Claim

The Complaint must be dismissed if it fails to allege facts that, if true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ibid*. Unless Plaintiff has pled concrete facts that, if true, would "nudge[] the[] claims across the line from conceivable to plausible," the Court should dismiss this case. *Twombly*, 550 U.S. at 570.

"It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Wright v. Assoc. Ins. Cas. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). The photographs of the cans, attached to the Complaint, do not include the entire contents of

each label. (Compl., Ex. A). Accompanying this motion are copies of the complete Arnold Palmer Beverage labels referenced in the complaint. (Declaration of Don Vultaggio, "Vultaggio Dec.," Exs. A and B).

> **A.** **Plaintiff's Claims Are Expressly Preempted Because the Complaint Does Not State a Claim of a FDCA Violation Based Upon the Applicable Testing Standard to Determine Calorie Content.**

The FDCA, as amended by the NLEA, establishes a comprehensive, national scheme of regulation for labeling food and dietary supplements. *Turek, Inc.*, 662 F.3d at 426. To prevent states from interfering with uniform national labeling, the FDCA bars them from "directly or indirectly" imposing "any requirement for nutrition labeling of food that is not identical" to requirements set out in federal statutes or regulations. 21 U.S.C. § 343-1(a)(1)-(5); *Turek*, 662 F.3d at 426-27. The text of the applicable preemption provision, at 21 U.S.C. § 343-1(a) provides, in pertinent part:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—
>
> * * *
>
> (4) any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title. . .

21 U.S.C. § 343(q) governs the disclosure of nutrition information on a product label, including calorie content. 21 U.S.C. § 343(q)(1)(C). A food label must provide "the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food[.]" 21 U.S.C. § 343(q)(1)(A)(i); *see* 21 C.F.R. § 101.9(b)(1); *see also* 21 C.F.R. § 101.12(b) (defining "reference amounts customarily consumed" or "RACC"). Taken together, this statutory structure expressly preempts any state law claim that would have the effect of creating a non-identical requirement.

A state requirement is "not identical" if it: (a) is "not imposed by" federal law or (b) differs from the requirements "specifically imposed by" federal law. 21 C.F.R. § 100.1(c)(4). "It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products . . . . Manufacturers might have to print 50 different labels, driving consumers . . . crazy." *Turek*, 662 F.3d at 426. If a complaint asserts a state law claim that is contrary to federal labeling law, courts do not hesitate to dismiss it. *See Turek*, 662 F.3d at 426-427; *Reyes v. McDonald's Corp.*, No. 06-1604, 2006 WL 3253579, *6 (N.D. Ill. Nov. 8, 2006).

In *Turek*, the Seventh Circuit addressed an appeal of an order dismissing claims that "chewy bars" misstated fiber in the product. 662 F.3d at 425. The court affirmed the trial court's dismissal, ruling that such claims were expressly preempted by the FDCA because the labeling was found to be compliant with the federal regulations, and the additional disclaimers plaintiff was seeking to add to that labeling were not identical to the federal labeling requirements. *Id*. at 427.

### 1. Testing Standards Under 21 C.F.R. § 101.9(c)

The FDA's implementing regulations provide five different mechanisms that a food manufacturer may use to calculate the calorie content of a food item. *See* 21 § C.F.R. 101.9(c)(1)(i). The FDA approved-mechanisms for calculating calories are:

- Using specific Atwater factors (*i.e.*, the Atwater method) given in Table 13 "Energy Value of Foods—Basis and Derivation," 21 C.F.R. § 101.9(c)(1)(i)(A);

- Using the general factors of 4, 4, and 9 calories per gram for protein, total carbohydrate, and total fat, respectively, 21 C.F.R. § 101.9(c)(1)(i)(B);

- Using the general factors of 4, 4, and 9 calories per gram for protein, total carbohydrate (less the amount of non-

digestible carbohydrates and sugar alcohols) and total fat, respectively, 21 C.F.R. § 101.9(c)(1)(i)(C);

- Using data for specific food factors for particular foods or ingredients approved by the Food and Drug Administration, 21 C.F.R. § 101.9(c)(1)(i)(D); or

- Using bomb calorimetry data, 21 C.F.R. § 101.9(c)(1)(i)(E).

**2.      Preemption Applies Because Plaintiff Fails to Allege Lack of Calorie Content Based Upon the FDA Standard.**

Plaintiff makes a conclusory allegation that the "zero calories version of the drink did not have less than five calories." (Compl, ¶ 23). There are no allegations about testing and no reference to the operative FDA regulatory standard that governs determination of calories in a beverage (*i.e.*, 21 C.F.R. § 101.9(c)). He does not allege that any one of the aforementioned five methods yields a calorie count greater than what is listed on the label. He does not even allege the number of calories in the Arnold Palmer Beverages he purchased. In *Burke v. Weight Watchers Int'l, Inc.,* 983 F. Supp. 2d 478, 483 (D.N.J. 2013), which addressed similar issues involving labeling of diet ice cream, the court cited to 21 C.F.R § 101.9 in ruling that state law claims of false calorie content were preempted due to plaintiff's failure to plead a violation of the FDA regulation under which the number of calories are to be calculated.

21 C.F.R. § 101.9(g)(5) contains a safe harbor provision which allows the total number of calories measured by any of the five methods to be as much as 20% greater than the calorie content listed on the label. Plaintiff claims that ABU mislabels the Arnold Palmer Beverage by falsely stating the calorie amount, but he does not allege the amount of calories he is claiming is contained in the drink. Consistent with 21 C.F.R. § 101.9(g)(5), no violation of the FDCA can be pled—even if there is an overstatement—unless there is an allegation that the statement of caloric content is 20% greater than the calorie contact listed on the label. In *Burke*, the court

ruled that the claims were preempted for the additional reason that plaintiff did not plead that every one of the test results exceeded the calorie value by more than 20%. 983 F. Supp. 2d at 483. Here, because Plaintiff did not plead what the actual calorie counts were in the Arnold Palmer Beverages he purchased, he also did not plead that the actual calorie values of the beverages exceeded the stated calories on the label by more than 20%.

*Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048 (N.D. Cal. 2013) also involved similar claims as asserted here. Plaintiff there alleged that the zero calorie product was deceptively marketed alleging it contained 771 calories per bottle. *Id.* at 1051. The court dismissed the serving size claim on preemption grounds under 21 C.F.R. § 101.12(b). *Id.* at 1056. With regard to plaintiff's claims regarding the labeling of zero calories on the front label, the court ruled that if "defendant was entitled to use rounded figures in the nutrition panel, it was also entitled to use them on the front label." *Ibid.* Both claims were dismissed with leave to amend. *Ibid.*

### 3. Plaintiff's Bare Bones Pleading Cannot be Fairly Read to State a Violation of the FDCA.

Many courts in this District, when addressing motions to dismiss claims on preemption grounds, in the context of mislabeling, undertake to read the pleadings liberally to determine whether a claim of violation of the FDCA has been asserted, as long as the plaintiff alleges that some pre-suit testing was conducted. For example, in *Gubala v. HBS Int'l Corp.*, No. 14-9299, 2016 WL 2344583 (N.D. Ill. May 4, 2016), the plaintiffs alleged that the defendant misstated the protein content of its protein supplement. *Id.* at *1. Defendant sought dismissal contending that the nitrogen factor calculation under 21 C.F.R. § 101.9(c)(7) applied and preempted plaintiffs' claims. *Id.* at *3. Plaintiffs alleged that a different test should be applied. *Id.* at *1. The court denied that aspect of the motion, ruling that the plaintiffs were "not required to plead compliance

with 21 C.F.R. § 101.9(g)(2) in order to survive a motion to dismiss and that their allegations, **bolstered by the third-party testing results attached to the SAC**, plausibly claim that the protein content on the front of the label would not be supported by the results of a PDCAAS test." *Id.* at *4 (emphasis added).

However, the court reached a different conclusion with regard to the *Gubala* plaintiffs' additional claims concerning false statements about the biological quality of protein in the product. *Id.* at *5. With regard to that claim, the court observed that 21 C.F.R § 172.320 set forth the applicable standard for a manufacturer to claim that it improved the biological content of protein and required the court to examine if a violation occurred under that regulation. *Ibid.* Because plaintiffs failed to allege facts beyond bare conclusions of law, the court dismissed that claim, without prejudice, citing *Twombly*. *Ibid.*

In *Muir v. NBTY, Inc.*, No. 15-9835, 2016 WL 5234596, *1 (N.D. Ill. Sept. 22, 2016), the plaintiff filed a putative class action alleging that dietary supplements sold by defendants contained a lower amount of an active ingredient than listed on their labels. Defendant filed a motion to dismiss alleging that the plaintiff's allegations of liability were insufficient to state a claim because the plaintiff did not allege compliance with the testing standards under 21 C.F.R. § 101.9(g)(2). *Id.* at *5. In support of the complaint, the plaintiff attached test results for the products. *Id.* at *1. The court denied the motion to dismiss following the principles cited in *Gubala*, ruling that "compliance with the 12-sample testing protocol is not a requirement at the pleading stage." *Id.* at *6; *see also Ulrich v Probalance, Inc.*, No. 16-10488, 2017 WL 3581183, *4-5 (N.D. Ill. Aug. 18, 2017) (denying motion to dismiss on preemption grounds because plaintiff's complaint could be read to allege that the labels failed to state a percentage of daily reference value of protein in accordance with 21 C.F.R. § 101.9(c)(7)(i) and (ii)).

There is no basis here for this Court to infer a violation of the FDCA because Plaintiff has not alleged any testing of the product. Like the claim presented in *Gubala* regarding biological quality of protein, the Complaint here is devoid of factual allegations to support the contention that ABU falsely stated calorie content. Consistent with *Turek*, without alleging a violation based upon the applicable FDCA testing standard, all of Plaintiff's claims are expressly preempted.

**B.    Plaintiff's Conclusory Allegations About Calorie Content Do Not Satisfy the Standards Under *Twombly* and *Iqbal***

Plaintiff asserts that ABU renamed the beverage diet because the beverage did not qualify as being zero calorie. (Compl., ¶ 20). Even if that allegation is accepted as true, no plausible claim for relief has been stated because the change in labeling was made as a result of a recent change in the FDA laws concerning labeling of serving sizes. [1]

Plaintiff's claims are asserted in apparent disregard of the recent change in the FDA regulations governing how labels are to state calories per serving and per container. 21 C.F.R. § 101.12 was amended to require that the calorie content of a beverage be calculated for 12 ounce serving size, and that the calorie content of that serving size, as well as the entire container, be disclosed on the nutrition facts panel. 81 Federal Register 34000 (May 27, 2016). In the

---

[1] 21 C.F.R. §§ 101.9 and 101.12 were amended so as to render ". . .the RACCs that are used to determine serving sizes consistent with section 403(q)(1)(A)(i) of the FD&C Act. . . ." 81 Fed. Reg. 34000 (May 27, 2016). The FDA further required "single-serving containers and dual-column labeling." *Id.* at 34001. The rule further states that "[t]o address containers and units that may be consumed in one or more sittings, or shared, we are requiring that containers and units that contain at least 200 percent and up to and including 300 percent of the RACC be labeled with a column of nutrition information within the Nutrition Facts label that lists the quantitative amounts and percent DVs for the **entire container**. . . ." *Ibid.* (emphasis added). Under 83 Fed. Reg. 19619 (May 4, 2018), the compliance date with respect to these changes to 21 C.F.R. § 101.9 and 21 C.F.R. § 101.12, was extended from July 26, 2018 to January 1, 2020 with respect to manufacturers, including ABU, with $10 million or more in annual food sales.

container at issue, that meant stating calories on 12 ounce serving size basis and on the 23 ounce can. Pursuant to 83 Fed. Reg. 19619 (May 4, 2018), the compliance date for that new regulation was extended to January 1, 2020.

Prior to amendment, 21 C.F.R. § 101.12 required calorie content of a beverage to be calculated based upon an 8 ounce serving size. The label of the Arnold Palmer Beverage that Plaintiff alleges to have purchased includes the calorie count for an 8 ounce serving. (Compl., Ex. A). Significantly, all of Plaintiff's alleged purchases occurred in 2019 when that 8 ounce serving size standard applied. (*Id.*, ¶¶ 13-16). Prior to the amendment to 21 C.F.R. § 101.12, no statement of calories per container was required. As long as the beverage had less than 5 calories per 8 ounces, the Arnold Palmer Beverage could be labeled as having "zero calories" per serving. 21 C.F.R. § 101.60(b)(1).

Of equal significance is that 21 C.F.R. § 109.1(c)(1) requires that calories be "expressed to the nearest 5-calorie increment up to and including 50 calories, and 10-calorie increment above 50 calories, except that amounts less than 5 calories may be expressed as zero." In other words, under 21 C.F.R. § 101.9(c), a beverage label need not state actual calories as rounding of calorie content, to the nearest 5 calorie increment, is mandated.

The change to 21 C.F.R. § 101.12, governing serving size, required the label on the Arnold Palmer Beverage, effective January 1, 2020, to state calorie content in terms of a 12 ounce serving size as well as for the entire 23 ounce container. Pursuant to that new FDA regulation, the Arnold Palmer Beverage labeled "diet" appropriately states 5 calories per 12 ounce serving and 15 calories per container pursuant to the 5 calorie increment requirement under 21 C.F.R. § 101.9(c)(1). (Compl., Ex. A; Vultaggio Dec, Ex. B). Plaintiff alleges no facts to contest whether 21 C.F.R. § 101.9(c)(1) was violated. To the extent that Plaintiff

asserts that ABU could not express calories to the nearest 5 calorie increment, such claims are expressly preempted under *Turek*.

Plaintiff's Complaint cannot withstand scrutiny under *Iqbal* and *Twombly* because Plaintiff pleads no facts to state how, when and why the calorie content on the label of the Arnold Palmer Beverage was misstated. On this pivotal point, the rationale of the court in *Curran* is instructive. In that case, the plaintiff claimed that a sunscreen label falsely stated the levels of sun protection factors. *Curran*, 2018 WL 2431981, at *1. The standard for such factors was governed by a testing regulation under 21 C.F.R. § 201.327(a)(1)(i) and (ii). *Id.* at *3. Plaintiff alleged that he conducted his own testing and that this testing was in compliance with FDA testing methods. *Ibid.* Nevertheless, the court ruled that because plaintiff was pleading fraud, simply pleading compliance with FDA testing methods was "not enough," stating further that "plaintiff needs to include some facts about his testing procedure in order to make it plausible that the defendant's label was not in compliance with the requirements of 21 C.F.R. § 201.327." *Id.* at *4. As a result, the complaint was dismissed without prejudice, with leave to amend. *Ibid.* Consistent with *Curran*, dismissal of the Complaint, without prejudice, is warranted because Plaintiff has not alleged a sufficient factual basis underlying his claim that calories were misstated.

C.    **No Pre-Suit Notice of Breach of Warranty is Alleged and Counts I and II Fail as a Matter of Law.**

To state a claim for breach of express or implied warranty under Illinois Law, notice of breach is required. *See Baldwin v. Star Scientific, Inc.*, No. 14-588, 2016 WL 397290, *9 (N.D. Ill. Feb 2, 2016); *see also Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015). Wisconsin and Indiana have identical Uniform Commercial Code provisions with regard to bringing suit for breach of warranty. Those two states codified Section 607(3) of the UCC which

provides that "where a tender has been accepted, the buyer must, within a reasonable time after

he discovers or should have discovered any breach notify the seller of breach or be barred from

any remedy." Wis. Stat. Ann. § 402.607(3)(a); Ind. Code § 26-1-2-607(3)(a).

This notice requirement also applies to claims of breach of implied warranty. *Arcor, Inc.*

*v. Textron, Inc.*, 960 F.2d 710, 715 (7th Cir. 1992) (Illinois law); *Cornerstone Design, Ltd. v.*

*Lumatec USA, Inc.*, No. 2005-2448, 2007 WL 1695246, *7 (Wis. Ct. App. June 13, 2007);

(Wisconsin law); *Advantage Eng'g, Inc. v. Burks Pumps, Inc.*, No. 93-3883, 1994 WL 317126,

*7 (7th Cir. June 30, 1994) (Indiana law). As Plaintiff does not allege that he provided any pre-

suit notice to ABU, his claims for breach of warranty in Counts I and II fail.

**D.** **No Legal Basis Exists to Claim Breach of Implied Warranty Under the Magnuson-Moss Warranty Act**

A Magnuson-Moss claim "is contingent on Plaintiff having a viable state law warranty

claim." *O'Connor v. Ford Motor Co.*, No. 19-5045, 2020 WL 4569699, *7 (N.D. Ill. Aug. 7,

2020). Instead of creating an independent cause of action, Magnuson-Moss "allows consumers

to enforce written and implied warranties in federal court, borrowing state law causes of action."

*Schimmer v. Jaguar Cars., Inc.*, 384 F.3d 402, 405 (7th Cir. 2004). In *O'Connor*, the court

dismissed the plaintiff's Magnuson-Moss claim because the plaintiff's state law warranty claims

failed. 2020 WL 4569699, at *7. Here, due to lack of notice, Plaintiff's express warranty claims

fail. Therefore, no legal grounds exist to sue for implied warranty under Magnuson-Moss.

Additionally, the statement "zero calories" on the label is not a warranty under

Magnuson-Moss. In that statute, the term "written warranty" is defined as:

> (A)   any written affirmation of fact or written promise made in
> connection with the sale of a consumer product by a supplier to a
> buyer which relates to the nature of the material or workmanship
> and affirms or promises that such material or workmanship is

> defect free or will meet a specified level of performance over a specified period of time, or
>
> (B)     any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6).

The statement "zero calories" fails the definition of written warranty under 15 U.S.C. § 2301(6)(B) because that phrase does not set forth any "specifications" which could be used to determine when the promise was triggered. *See Semitekol v. Monoco Coach Corp.*, 582 F. Supp. 2d 1009, 1028 (N.D. Ill. 2008).

The decision in *In re Sears, Roebuck & Co.*, No. 05-2623, 2006 WL 1443737 (N.D. Ill. May 17, 2006) is equally applicable. The court there ruled that the statement "Made in USA" did not constitute a written warranty. *Id.* at *3-4. The court agreed with Sears' assertion that such a statement did "not affirm a promise that the material or workmanship is defect free or would perform at a specified level over a specified time." *Id.* at *4. Similarly, the statement that the Arnold Palmer Beverage had "zero calories" was not a representation of workmanship or a promise that such workmanship was defect free. Plaintiff does not claim that the Arnold Palmer Beverages he purchased were not a beverage or had some defect.

Even if Plaintiff is able to overcome these legal deficiencies, another legal bar exists because the Magnuson-Moss claim applies to "warranties which pertain to consumer products actually costing the consumer more than $5." 15 U.S.C. § 2302(e); *see Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 919 (N.D. Ill. 2013). Plaintiff has not alleged that the products he

purchased cost more than five dollars. In the absence of alleging this critical fact, Plaintiff cannot assert a cause of action under Magnuson-Moss and count II ought to be dismissed.

There is no legal basis to claim breach of implied warranty under Magnuson-Moss and just grounds exist to dismiss Count II of the Complaint.

**E.** **The ICFA and IDCSA Safe Harbor Provisions Bar Plaintiff's Claims Under Counts III and V.**

In *Turek*, the Seventh Circuit observed that the ICFA does not apply to "actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of the State or the United States." 662 F.3d at 427 (citing 815 Ill. Comp. Stat. Ann. 505 /10b(1). Due to the fact that the "representations on the packaging of the defendants' chewy bars concerning dietary fiber are specifically authorized by the federal statutes and regulations. . .," the claims under the Illinois consumer product were held to be barred under the Safe Harbor provision. *Ibid.* Similarly, the IDCFA, at Section 24-5-0.5-6, provides that the IDCSA "does not apply to an act or practice that is . . . expressly permitted by federal law, rule, or regulation." Ind. Code § 24-5-0.5-6.

ABU's labeling of the caloric content of the Arnold Palmer Beverages, as having 5 calories per serving and 15 calories per container, is expressly permitted by 21 C.F.R § 101.9(c) and 21 C.F.R. § 101.12. Until January 1, 2020, ABU's label on the Arnold Palmer Beverage as "zero calories" per 8 ounce serving was lawful under 21 C.F.R § 101.12. Whether a beverage qualifies as having "zero calories" is governed under 21 C.F.R. § 101.60(b)(1)(i). Significantly, Plaintiff has not alleged that ABU violated these regulations. Because ABU's labeling is expressly authorized by federal law, the safe harbor provisions of the ICFA and IDCSA apply and justify dismissal of Counts III and V of the Complaint.

**F.      Pre-Suit Notice is Required Before a Claim Can Be Filed Under the IDCSA.**

Ind. Code § 24-5 - 0.5-5(a) provides that:

> no action may be brought under this chapter, except under section 4(c) of this chapter, unless (1) the deceptive act is incurable or (2) the consumer bringing the action shall have given notice in writing to the supplier within the sooner of (i) six months after the initial discovery of the deceptive act, (ii) one (1) year following such a consumer transaction, or (iii) any time limitation, not less than thirty (30) days, of any period of warranty applicable to the transaction, which notice shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom, unless such a deceptive act shall have become an uncured deceptive act.

The reason for this requirement is so that the supplier has an opportunity to correct the problem. *A.B.C. Home & Real Estate Inspection, Inc. v. Plummer*, 500 N.E.2d 1257, 1262 (Ind. Ct. App. 1986). Because Plaintiff does not allege that he provided such notice to ABU, his claim for consumer fraud under the IDCSA, in Count V, is barred.

**G.      The Fraud Claims Lack Particularity as Required Under Rule 9(b).**

In addition to common law fraud, claims under the ICFA, the IDCSA and the Wisconsin Deceptive Trade Practices Act ("WDTPA") are subject to the heightened pleading requirement of Rule 9(b). *See Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1083 (N.D. Ill. 2018); *Jasper v. Abbott Labs. Inc.*, 834 F. Supp. 2d 766, 773 (N.D. Ill. 2011); *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 922 (W.D. Wis. 2010); *but see T&M Farms v. CNH Indus. Am., LLC*, No. 19-0085, 2020 WL 1082768, *10, n. 6 (E.D. Wis. Mar. 5, 2020). This heightened pleading requirement of Rule 9(b) obligates a party alleging fraud to "state with particularity the circumstances constituting fraud." *See Gonzalez v. City of Chicago*, No. 16-08012, 2018 WL 1561735, *7 (N.D. Ill. March 30, 2018). A plaintiff must describe the who, what, when, where and how of the fraud. *See Terrazzino*, 335 F. Supp. 3d at 1082.

Plaintiff alleges only that the FDA "[r]ecently" required ABU to relabel the "zero Calorie" product as a "diet" product with 15 calories per can." (Compl., ¶ 24). Plaintiff must be more specific as to these assertions. To the extent that allegation concerns the recent amendment to 21 C.F.R. § 101.12, which changed the standards for serving sizes, and concomitantly altered requirements for stating calorie content, then ABU's compliance with that FDA regulation cannot be a legal basis for fraud. Plaintiff also does not allege the purchase prices he allegedly paid for any of the Arnold Palmer Beverages. Because Plaintiff's out-of-pocket cost is relevant to his alleged damages, more specificity is required to plead damages.

Plaintiff's fraud claim fails under Rule 9(b) absent particularized allegations detailing: (1) the who, what, when, where and how stating the factual basis for asserting that ABU falsely stated the calorie content in the Arnold Palmer Beverages; and (2) the purchase prices. *See Curran*, 2018 WL 2431981, at *4 (ruling that since plaintiff is claiming fraud, some facts about testing had to be alleged). The failure to comply with Rule 9(b) warrants dismissal of the fraud claims in Counts III through VI of the Complaint.

**H.** **Plaintiff Does not Plead All the Elements Necessary to State a Claim for Common Law Fraud.**

The elements of common law fraud in Illinois are:

> (1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intent to induce reliance on the statement; (4) reasonable reliance upon the truth of the statement; and (5) damages resulting from that reliance.

*Beaton*, 2014 WL 4376219, at *3 (N.D. Ill. Sept. 2, 2014).

In Indiana, "[t]he essential elements of actual fraud are a false material representation of past or existing facts, made with knowledge or reckless ignorance of the falsity, which causes reliance to the detriment of the person relying on the representation." *Comfax Corp.*, 587 N.E.2d

at 125.  Under Wisconsin law, it has been observed that "[w]hereas proof of intent or knowledge of falsity is not required in. . . negligent misrepresentation claims, . . . it is a required element of an intentional misrepresentation claim."  *Boulet*, 2012 WL 12996297, at *5.

Plaintiff devotes only one sentence in his fraud count alleging that ABU "committed fraud by representing on the label and otherwise that the Arnold Palmer zero calorie drink had zero calories."  (Compl., ¶ 90).  Critically, Plaintiff does not assert that ABU made any statement knowing that it was false.  Absent that allegation, no claim exists in Count VI for fraud under Illinois, Wisconsin or Indiana law.

**II.    Transfer of Venue of this Matter is Proper Under 28 U.S.C. § 1404(a)**

28 U.S.C. § 1404(a) permits a court to transfer any civil action to any other district where the case might have been brought if the transfer serves "the convenience of parties and witnesses and promotes the interest of justice."  *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The purpose of Section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Ibid.* (citation omitted).

Venue may be proper in several districts.  *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009).  In such a case, "a district court may transfer any civil action to any other district or division where it might have been brought" after considering the convenience of the parties and witnesses and the interest of justice.  28 U.S.C. § 1404(a).  Section 1404(a) allows for a "flexible and individualized" analysis of the transfer application, and places "considerable discretion" in the transferor court.  *Dwyer Instruments, Inc. v. Wal-Mart.com USA, LLC*, No.17-636, 2017 WL 6034434, *2 (N.D. Ind. Dec. 6, 2017).  The threshold

of convenience necessary for a § 1404(a) transfer is less than the showing necessary for a *forum non conveniens* dismissal. *Coffey v. VanDorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

When considering the "convenience of parties and witnesses," courts take into account: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties and witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000); *see also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). In addition to the "convenience of the parties and witnesses," courts also evaluate "interest of justice factors," including the congestion of the respective court dockets, prospects for a speedy trial, and the courts' familiarity with the applicable law and the relationship of each community to the occurrence at issue in the case. *See RAH Color Techs., LLC v. Xerox Corp.*, No. 17-06813, 2018 WL 9539781, *4 (N.D. Ill. Sept. 24, 2018); *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 997 (N.D. Ill. 2012). As discussed below, these factors overwhelmingly favor transfer to the Eastern District of New York.

The Court may transfer a case under Section 1404(a) when: "(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice." *Hanover Ins. Co. v. N. Bldg. Co.*, 891 F. Supp. 2d 1019, 1025 (N.D. Ill. 2012). In ruling on a motion under Section 1404(a), "the district judge must consider the statutory factors in light of all the circumstances of the case" and this analysis "necessarily involves a large degree of subtlety and latitude." *Coffey*, 796 F.2d at 219. District courts are thus granted "a substantial degree of deference . . . in deciding whether transfer is appropriate." *Research Automation, Inc.*, 626 F.3d at 977-78.

For purposes of this motion, as ABU does not dispute personal jurisdiction over it, the first element of a transfer of venue under 28 U.S.C. § 1404(a) is satisfied. *See Amoco*, 90 F. Supp. 2d at 960.

### A.     Venue is Proper in the Eastern District of New York.

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). For venue purposes, an entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

In this case, venue is proper in the transferee district, the Eastern District of New York. As alleged in the Complaint, ABU is a citizen of New York. (Compl., ¶¶ 5-6). ABU's headquarters are in Woodbury, New York. (Vultaggio Dec., ¶ 4). Therefore, Defendant is deemed a "resident" of the Eastern District of New York because it is subject to personal jurisdiction in that district. *See* 28 U.S.C. §§ 1391(b)(1), (c)(2).

### B.     The Eastern District of New York is a More Convenient Venue.

#### 1.     Plaintiff's Choice of Forum

This factor is neutral. Although courts typically give deference to a plaintiff's choice of forum, such deference is "lessened, however, where the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC*, 846 F. Supp. 2d at 992; *see also Braddock v. Jolie*, No. 11-8597, 2012 WL 2282219, *3 (N.D. Ill. June 15, 2012) (giving less weight to plaintiff's choice of Illinois as a forum because plaintiff did not reside in Illinois and the majority of material events did not occur there).

Courts in this district have also held that a plaintiff's choice of forum is afforded less deference when the plaintiff represents a class. *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (giving less deference to plaintiff's choice of forum in a putative class action because "if class certification occurs, the named Plaintiffs choice of venue will not be the home venue for all plaintiffs and any venue selected is bound to be inconvenient to some plaintiffs"); *Lafleur v. Dollar Tree Stores, Inc.*, No. 1:11-8473, 2012 WL 2280090, *3 (N.D. Ill. June 18, 2012); *but see AL & PO Corp. v. Am. Healthcare Capital, Inc.*, No. 14-1905, 2015 WL 738694, *3 (N.D. Ill. Feb. 19, 2015) (noting that courts should "not assume such a broad class will in fact ultimately be certified" and that "unnamed class members presumably benefit from a class representative who is able to aggressively litigate their claims without significant inconvenience due to travel"); *Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 945 (N.D. Ill. 2015).

Plaintiff is a citizen of Michigan and resides in Lawrence, Michigan. (Compl., ¶ 4). Plaintiff also alleges that he bought the product at issue in four different states: Illinois, Wisconsin, Indiana, and Michigan. (Compl. ¶¶ 13-16). The mere fact that some of Plaintiff's alleged purchases occurred in Illinois is insufficient to establish a "significant connection" between Plaintiff and the forum state. "Sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 930-31 (N.D. Ill. 2017) (quoting *Anchor Wall Sys., Inc. v. R&D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 874 (N.D. Ill. 1999)). Because Plaintiff chose to file this matter as a putative nation-wide class action, less weight ought to be accorded to his choice of forum under the consideration that "the named Plaintiff[']s choice of venue will not be the home venue for all plaintiffs[.]" *See Jaramillo*, 664 F. Supp. 2d at 914.

Defendant respectfully submits that no weight ought to be accorded to Plaintiff's choice of forum because: (a) Plaintiff does not reside in the forum state, (b) Plaintiff cannot show a significant connection between himself and the forum, and (c) this matter has been filed as a putative nationwide class action.

### 2. Situs of Material Events

This factor strongly favors transfer of venue. "When the design or manufacture of a product is at issue, the situs of material events is where the product was produced, not where the plaintiff(s) made purchases." *Preston v. Am. Honda Motor Co., Inc.,* No. 17-3549, 2017 WL 5001447, *3 (N.D. Ill. Nov. 2, 2017). In a claim for breach of express warranty, the situs of material events is the location "where the business decisions causing the breach occurred." *First Nat'l Bank v. El Camino Resources, Ltd.,* 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006) (citation omitted). Similarly, where a claim involves misrepresentations or statements made to consumers, the situs of material events is where the defendant made the underlying business decisions. *See Jaramillo,* 664 F. Supp. 2d at 914 ("The conduct which is the focus of this suit is decisions by Defendants to market and sell Applebee's WeightWatchers Menu items with allegedly misrepresented nutritional information, not the purchases by Plaintiffs. The relevant decisions would have been made by employees of the Defendants at a headquarters office. . . .")

Plaintiff's case is premised upon labeling and calorie content of the Arnold Palmer Beverage but there are scant events or sources of proof in Illinois on these issues. Decisions regarding labeling, product content and sale were made in New York and ABU's witnesses are all located in New York. (Vultaggio Dec., ¶ 4-6). Additionally, none of the co-packers who make the Arnold Palmer Beverage are located in Illinois. (*Id.,*¶ 7). In the absence of documents or witnesses in Illinois, and the likely presence of Defendants' witnesses and documents in the

Eastern District of New York or elsewhere, this factor—the situs of material events—favors transfer to that district given ABU's presence there.

### 3.    Relative Ease and Access to Sources of Proof

"When documents are easily transferable, access to proof is a neutral factor… neither for nor against transfer." *First Nat'l Bank*, 447 F. Supp. 2d at 912 (citation omitted). Accordingly, this factor is neutral as virtually all the discovery that is anticipated to be exchanged will be through electronically stored information ("ESI") and/or is capable of being copied and/or transmitted and/or made available for inspection with minimal inconvenience.

### 4.    Convenience of the Witnesses

This factor favors transfer. "Convenience to the witnesses is the factor often viewed as having the most weight in determining whether to transfer venue." *Nicks v. Koch Meat Co., Inc.*, 260 F. Supp. 3d 942, 957 (N.D. Ill. 2017). As stated in *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1054 (N.D. Ill. 2012):

> When evaluating the convenience of the witnesses and the parties, the court may consider the following factors:  the number of potential witnesses located in the transferor and transferee districts; the expense of transportation and the length of time the witnesses will be absent from their jobs; the nature, quality, and indispensability of the witnesses' testimony; and whether the witnesses can be compelled to testify.

Although employee-witnesses should be given consideration, "[t]he convenience of non-party witnesses (and their employees), should be given more consideration than party witnesses (and their employees). . . . *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1061 (N.D. Ill. 2015); *see Rorah v. Petersen Health Care*, No. 13-01827, 2013 WL 3389063, *4 (N.D. Ill. July 8, 2013) ("the convenience of employee witnesses is given less weight than the convenience of non-party witnesses"). None of the co-packers, who make ABU's beverages, are located in

Illinois.  (Vultaggio Dec., ¶ 7).  Requiring co-packers, who have knowledge of the content of the Arnold Palmer Beverage, to travel to Illinois to testify would be inconvenient.  For the convenience of such witnesses, transfer of venue is proper.

### 5.      Convenience to the Parties of Litigating in Respective Forums

This factor is neutral.  For this issue, "courts consider the residences and resources of the parties—in essence, their 'abilit[y] to bear the expense of trial in a particular forum.'"  *Kjaer Weis*, 296 F. Supp. 3d at 934 (citation omitted).  While the Eastern District of New York is a far more convenient venue for Defendant than Plaintiff, Plaintiff filed the matter as a putative nationwide class action and the current venue is likely equally inconvenient for many other unnamed plaintiffs.

### C.      It is in the Interest of Justice That Venue be Transferred to the Eastern District of New York.

"In considering the interests of justice, courts weigh additional factors, including: (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies in each locale; and (4) the relation of each community to the occurrence at issue."  *Hanover Ins. Co.*, 891 F. Supp. 2d at 1025.

### 1.      Speed to Trial

This factor favors transfer.  To evaluate the speed at which a case will proceed, the court may consider: "(1) the median number of months from filing to disposition and (2) the median number of months from filing to trial."  *Amoco Oil Co.*, 90 F. Supp. 2d at 962.

"Rule 201(b) of the Federal Rules of Evidence permits a court to take judicial notice of an adjudicative fact that is 'not subject to reasonable dispute. . .'"  *In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (internal citation omitted).  In considering a motion to transfer venue, courts have referred to the U.S. District Courts, Combined Civil and Criminal Federal

Court Management Statistics. *RAH Color*, 2018 WL 953978, at *4. In that regard, Defendant refers to U.S. District Courts, Combined Civil and Criminal Federal Court Management Statistics (June 30, 2020), https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2020. Those statistics, not subject to reasonable dispute, provide pertinent information summarized as follows:

|  | **Filing to Disposition** | **Filing to Trial** |
|---|---|---|
| Eastern District of New York | 8.5 months | 39.7 months |
| Northern District of Illinois | 11.2 months | 41.3 months |

The above-referenced pages of these statistics are attached as Exhibit A to the accompanying Declaration of Robert P. Donovan, Esq. Additionally, the Northern District of Illinois had 15,671 pending actions, while the Eastern District of New York had only 11,815 pending actions. *Ibid.* These statistics show that the speed to trial factor favors transfer to the Eastern District of New York.

### 2. Familiarity of Each Forum with the Applicable Law

This factor is neutral. Both this Court and the Eastern District of New York possess the same degree of familiarity with the laws at issue including, but not limited to, Rule 23.

### 3. Desirability of Resolving Controversies in Each Locale

This factor favors transfer. In *Kjaer Weis*, the court found that despite allegations that the defendants sold infringing products in every state, the Central District of California had a greater relationship to the controversy because California "has an 'equal interest[ ] in redressing the alleged infringement' and defendants' activities are concentrated there." 296 F. Supp. 3d at 935 (internal citation omitted). Furthermore, the court concluded that because "the Central District

of California has a greater relationship to the controversy and therefore it is more desirable that the Central District of California adjudicate the dispute." *Id.*

Here, the Eastern District of New York has a strong interest in the current case because decisions concerning how the Arnold Palmer Beverage is labeled and decisions about its contents, result from conduct that occurred in New York. (Vultaggio Dec., ¶¶ 4-6). The Eastern District of New York has a greater relationship to the controversy, and therefore, it is more desirable that the Eastern District of New York to resolve the dispute. *See Weis*, 296 F. Supp. 3d at 935.

In contrast, Illinois does not have an interest in resolving alleged violations of Indiana and Wisconsin law by ABU, a citizen of New York. New York clearly has a greater interest than Illinois in resolving the allegations at issue here. *See, e.g., Heil Co. v. Curotto Can Co.*, No. 02-782, 2004 WL 725737, *3 (N.D. Ill. Mar. 30, 2004) ("Illinois does not have a strong interest in adjudicating a case between two companies neither of which is located in this State, and California has a greater interest in resolving a patent infringement action involving a company headquartered in California.").

**4.     Relation of Each Community to the Occurrence at Issue**

This factor favors transfer for the same reasons pertaining to factor 3. Plaintiff is not a citizen of Illinois and ABU is a citizen of New York. Plaintiff made only some of his purchases in Illinois. Plaintiff's choice to file this case as a putative nationwide class action lessens Illinois' already tenuous connection to this case. In contrast, as noted above, the decisions concerning how the product is labeled and its contents were made in New York.

When balancing all the factors, just grounds exist to transfer venue of this action to the United States District Court for the Eastern District of New York.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant Defendant's motion to dismiss Plaintiffs' Complaint or, alternatively, transfer venue to the United States District Court for the Eastern District of New York.

Dated:  November 12, 2020                   Respectfully submitted,

                                           /s/ Robert P. Donovan
                                           Robert P. Donovan, Esq.
                                           (Admitted Pro Hac Vice)
                                           McELROY, DEUTSCH, MULVANEY &
                                           CARPENTER, LLP
                                           570 Broad Street, Suite 1500
                                           Newark, New Jersey 07102
                                           Telephone:  (973) 622-7711
                                           rdonovan@mdmc-law.com

                                           -and-

                                           Casey T. Grabenstein, Esq.
                                           Saul Ewing Arnstein & Lehr LLP
                                           161 North Clark Street, Suite 4200
                                           Chicago, Illinois 60514
                                           Telephone:  (312) 351-3292
                                           Casey.grabenstein@saul.com

                                           Attorneys for Defendant,
                                           Arizona Beverages USA LLC